IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BILLY RAY,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil No. **05-809 - MJR** |
| **CHRISTINE BROWN, et al.,** | ) ) ) | |
| Defendant. | ) | |

# REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge Michael J. Reagan pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

Before the court is Defendants' Motion for Summary Judgment. **(Doc. 87)**. The motion is brought by defendants Adrian Feinerman, Mary Beth Lane, Amanda Johnson, and Wexford Health Sources, Inc. Defendants served the notice required by ***Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982)**. **See, Doc. 89.** Plaintiff filed responses at **Docs. 93 and 114.** Defendants filed a reply at **Doc. 106.**

This court previously issued a Report and Recommendation on this motion, which was docketed at **Doc. 115.** Judge Reagan rejected that Report and Recommendation because plaintiff had outstanding discovery requests and had been given additional time in which to respond to pending motions, and the time had not yet run. **See, Doc. 127.**

Pursuant to Judge Reagan's order, this court has now ruled on plaintiff's outstanding discovery motions and his motion for leave to file a supplemental brief. **See, Docs. 128, 129, and 130.** The court granted leave to file the supplemental brief, which was docketed at **Doc. 117**. The court has considered all of plaintiff's responses, that is, **Docs. 93, 114, and 117**, in formulating this Report and Recommendation.

## Nature of Plaintiff's Claims

Plaintiff Billy Ray is a prisoner in the custody of the Illinois Department of Corrections. He brings suit under 42 U.S.C. §1983, alleging that defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment.

In his amended complaint, **Doc. 55**, plaintiff alleges that he hurt his right knee while playing basketball at Pinckneyville Correctional Center on June 9, 2004. He alleges that defendants refused to give him medical treatment or pain medication thereafter. According to plaintiff, he spent the five days after his injury in his cell with no food because he was unable to walk. On June 15, 2004, he was seen by defendant Feinerman for a blood pressure check. When plaintiff complained about his knee, Dr. Feinerman grabbed his leg, told him he was fine, and refused to give him pain medication or crutches. On June 25, 2004, plaintiff was seen by a Nurse Cole, who saw that his knee and/or leg were swollen; plaintiff was then admitted to the health care unit. On June 28, 2004, Feinerman and Brown came to his room in the healthcare unit and told him that he needed to stop complaining if he wanted an x-ray, and that, if the x-ray showed nothing, he would have to leave.

On July 2, 2004, Brown and Feinerman came to his room in the HCU and told him the x-ray was negative. He remained in the healthcare unit. On July 15, 2004, plaintiff was sent to St. Mary's Hospital in East St. Louis, Illinois, for a consultation. Dr. Ramon said he needed an MRI and that pain medication should be continued. On July 28, 2004, plaintiff was sent to an outside facility for an MRI. The MRI showed a fracture of the medial tibial plateau, along with degenerative changes in the meniscus. Plaintiff was discharged from the health care unit on August 19, 2004. See, Amended Complaint, **Doc. 55**.

## Standard for Summary Judgment

Summary judgment is appropriate under **Fed.R.Civ.P. 56** where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).** The evidence is construed in the light most favorable to the non-moving party and all justifiable inferences are drawn in favor of that party. **See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14 (1986).** Once the moving party has produced evidence to show that he or she is entitled to summary judgment, the non-moving party must affirmatively demonstrate that a genuine issue of material fact remains for trial. ***Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996).** In responding to a summary judgment motion, the non-moving party may not simply reiterate the allegations contained in the pleadings; more substantial evidence must be presented at this stage. Moreover, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," ***Anderson*, 477 U.S. at 247**, or by "some metaphysical doubt as to the material facts," ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).** Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." ***Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.**

Summary judgment is not barred by the mere existence of some factual dispute. ***Anderson*, 477 U.S. at 248; see also, *JPM Inc. v. John Deere Industrial Equipment Company*, 94 F.3d 270, 273 (7th Cir. 1996).** Only disputes as to facts that might affect the outcome of the suit in light of the substantive law are sufficient to defeat summary judgment. Disputes as to irrelevant or unnecessary facts do not preclude summary judgment. ***Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).**

Plaintiff is a *pro se* inmate, and his pleadings must be liberally construed. **Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir.1981).**

### Analysis

The Eighth Amendment prohibits "deliberate indifference to serious medical needs."**Oliver v. Deen, 77 F.3d 156, 159 (7th Cir.1996)** (quoting **Estelle v. Gamble, 429 U.S. 97, 97 St. Ct. 285 (1976)**). In order to prevail on his constitutional claim, plaintiff must satisfy the two-part test enunciated in **Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994)**. The test has two prongs, that is, an objective and a subjective component. Thus, plaintiff must show (1) his condition was objectively serious, and (2) the defendant acted with deliberate indifference, which is a subjective standard. **Reed v. McBride, 178 F. 3d 849, 852 (7th Cir. 1999).**

A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." **Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)**. Unnecessary pain and suffering, <u>if sufficiently serious</u>, may implicate the Eighth Amendment. **See, Estelle, 97 S. Ct. at 290.**

The subjective prong of the **Farmer** test requires that plaintiff show that defendant acted with a sufficiently culpable state of mind, "something akin to criminal recklessness." **Norfleet v. Webster, 439 F.3d 392, 397 (7th Cir. 2006).** Negligence or medical malpractice does not meet this standard. **Id., at 396**; **Estelle, 97 S. Ct. at 292**; **Wood v. Woracheck, 618 F.2d 1225 (7th Cir. 1980)**. Likewise, the provision of a course of treatment other than that preferred by the inmate will not create liability. **Estelle, 97 S. Ct. at 293; Burns v. Head Jailor, 576 F. Supp. 618 (N.D. Ill. 1984).** An inmate has no right to a particular course of treatment of his choosing. **Meriweather v. Faulkner, 821 F.2d 408, 413 (7th Cir. 1987).**

Liability under 42 U.S.C. §1983 is personal; there is no liability unless the defendant

"caused or participated" in the deprivation of a constitutional right. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Thus, the two-prong *Farmer* test must be satisfied as to each defendant.

Numerous exhibits are attached to **Doc. 87**, including defendants' affidavits, plaintiff's medical records, and portions of plaintiff's deposition.

Dr. Feinerman's affidavit and the attached records establish that he first saw plaintiff after the knee injury on June 14, 2004, for a blood pressure check. At that time, he noted plaintiff's knee had some swelling, but no crepitus and a full range of motion. Dr. Feinerman assessed it as a sprained knee.

Dr. Feinerman saw him again on June 25, 2004, at which time he had swelling and was unable to fully extend the knee. The assessment was a soft tissue injury. Dr. Feinerman ordered that he be admitted to the infirmary, which is also referred to as the healthcare unit. Plaintiff was admitted, and stayed in the healthcare unit until August 23, 2004. He was given Motrin for pain and was evaluated by nurses every day during his admission.

On June 28, 2004, Dr. Feinerman saw plaintiff in the healthcare unit. He again assessed it as a soft tissue injury, ordered an increased dose of Motrin, application of moist heat, and an
x-ray. Dr. Feinerman saw him again on the next day, and states in his affidavit that "He appeared to have a soft tissue injury which I expected to heal with bed rest." **Ex. A, ¶21.**

On June 30, 2004, Dr. Feinerman noted decreased range of motion and that there was still swelling. He began to think plaintiff had a possible torn meniscus. However, on July 1, 2004, the swelling was decreased, and Dr. Feinerman "felt more confident" that it was a soft tissue injury. By July 6, 2004, as the knee had not gotten better with bed rest, Dr. Feinerman decided that plaintiff needed to be seen by an orthopedic physician. That request was approved by

5

Wexford on the same day that it was made. An appointment was made for July 15, 2004. Plaintiff remained in the healthcare unit and was given Motrin until the date of the appointment.

Plaintiff was seen by Dr. Ramon at St. Mary's Hospital in East St. Louis, Illinois, on July 15, 2004. Dr. Ramon recommended a repeat x-ray and an MRI. An MRI was scheduled for July 28, 2004, at an outside institution.

Dr. Feinerman saw plaintiff on July 28, July 29, and July 30, 2004, and noted that his condition was unchanged. On August 2, 2004, Dr. Feinerman discussed the MRI report with plaintiff. Dr. Feinerman felt that plaintiff needed an orthopedic consult. According to Dr. Feinerman's affidavit, he discussed the situation with Dr. Owen of Wexford on the same day, and Dr. Owen approved the request for an orthopedic consult. An appointment was made with an outside orthopedic specialist, Dr. Miller, for August 9, 2004.

Dr. Miller's report indicated that the non-displaced fracture of the medial tibial plateau was healed by August 9, 2004, and that he recommended that plaintiff resume normal activities of daily living, and resume sports in October. Based on Dr. Miller's report, plaintiff was discharged from the healthcare unit on August 19, 2004, with the restrictions outlined by Dr. Miller.

Dr. Feinerman saw plaintiff in October, 2004. At that time, the range of motion of the leg was within normal limits. The next visit was in February, 2005; plaintiff made no complaints about his knee at that time.

In his response to the motion for summary judgment, plaintiff explains that he does not deny that he was treated for his knee injury on an after June 25, 2004, when he was admitted to the health care unit. His real complaint is that he was denied treatment from the date of the injury, June 9, 2004, until he was admitted to the healthcare unit. **See, Doc. 93.**

In **Doc. 114**, his first amended response, plaintiff identifies some "genuine issues of

6

material facts." None of these facts make any difference to the outcome of the motion. For instance, plaintiff states that he was told to leave the healthcare unit on June 9, 2004, and was told that there was nothing wrong with his knee. Defendants do not dispute that allegation.

In his "supplemental brief," **Doc. 117**, plaintiff highlights various statements from the affidavits that defendants filed in support of their motion. For instance, he points out that defendant Feinerman admits to evaluating his knee on June 14, 2004, but did not issue any medication. He also points out that Dr. Feinerman admits that he was not admitted to the healthcare unit until June 25, 2004. Nurse Lane stated in her affidavit that she may have wheeled Ray into the emergency room on June 9, 2004. Defendant Johnson stated that she found no swelling or bruising in plaintiff's knee.

Plaintiff also states that an MRI taken on June 28, 2004, showed that his "leg and knee was still fractured." In support, he refers to Exhibit 3, third paragraph. **See, Doc. 117, p.3**. Plaintiff's statement is incorrect, as is demonstrated by his Exhibit 3. In fact, there was no MRI done on June 28, 2004. Rather, the MRI was done on July 28, 2004; that test showed a fracture of the tibial plateau. **See, exhibit 3 attached to Doc. 117.** Defendants do not dispute that the MRI done on July 28, 2004, showed such a fracture. That information was clearly stated in Dr. Feinerman's affidavit filed in support of the motion. In short, none of plaintiff's three responses to the motion identify any relevant disputed issue.

**1.     Wexford Health Sources, Inc.**

The only allegation as to Wexford is that, on July 2, 2004, Dr. Feinerman told plaintiff that "it was going to be hard to get him to an outside hospital" because Wexford "limits inmates from receiving treatment from outside facilities." Feinerman allegedly told plaintiff that if Wexford denied a request for outside treatment, "that is that," and he could not receive the

7

treatment. **Doc. 55, p. 8**.

Wexford is entitled to summary judgment. As defendant points out, in order to make a case against Wexford, he must show that his constitutional rights were violated as a result of an express policy or custom of the corporation. ***Jackson v. Illinois Medi-Car, Inc.*, 300 F.3d 760, 766 (7th Cir. 2002)**. Here, he cannot do so. In fact, he has not even made that allegation. He claims that Dr. Feinerman made the alleged statements about outside treatment on July 2, 2004. He then alleges that he was, in fact, seen at outside medical facilities on July 15, 2004, and on July 28, 2004. **Doc. 55, p. 8**.

The record establishes that Wexford Health Sources, Inc., did not prevent plaintiff from being seen by outside healthcare providers. According to Dr. Feinerman's affidavit and the documents attached thereto, each time he requested approval for plaintiff to be seen by an outside provider, the request was promptly approved by Wexford. Plaintiff was seen by an outside orthopedic specialist twice, and was given an MRI at an outside facility.

In addition, Wexford cannot be held liable under Section 1983 as the employer of the other defendants. ***Jackson*, 300 F.3d at 766.** There is no basis for liability as to Wexford, and summary judgment should be granted in its favor.

**2.    Mary Beth Lane**

Defendant Lane was a nurse at Pinckneyville. In his amended complaint, plaintiff alleges that she took him from the yard to the healthcare unit in a wheelchair on the day of his accident. **Doc. 55, p. 6**. His complaint against her is that she did not recommend that he see a doctor or give him crutches. See, plaintiff's deposition, **Doc. 87, Ex. D, pp. 31, 63.**

Defendant Lane's affidavit is attached to **Doc. 87 as Exhibit C**. She states that she has no recollection of treating plaintiff and that her name does not appear in the medical records. She does not deny that she may well have wheeled him to the healthcare unit. She further notes

8

that Amanda Johnson completed an Inmate Injury Report on June 9, 2004, indicating that it was Johnson, and not Lane, who examined him on that date.

Lane is entitled to summary judgment. Even under plaintiff's version of the events, all she did was to respond to a call and wheel him to the healthcare unit. Under these circumstances, plaintiff cannot meet either prong of the *Farmer* test as to this defendant.

**3.     Amanda Johnson**

Plaintiff's claim against Johnson is similar. She is a nurse also, and plaintiff alleges that she did not examine or treat him when he was taken to the health care unit on the day of the injury. According to plaintiff, she told him he was alright and could leave the healthcare unit. . See, plaintiff's deposition, **Doc. 87, Ex. D, p. 32.** In addition, plaintiff alleges that Johnson made a remark suggesting that they were going to have to cut his leg off. **Doc. 55, p. 6**.

Defendant Johnson's affidavit is attached to **Doc. 87 as Exhibit B**. She states that she evaluated plaintiff for his injured knee and completed an Inmate Injury Report, which is attached to her affidavit. She states that her evaluation was that there was no swelling, no bruising, and that plaintiff walked with a "slight limp." She further states that she did not believe that plaintiff suffered from a medical need that required immediate attention. His temperature, pulse, and respirations were all normal. His blood pressure was slightly elevated, which was consistent with the fact that he had been playing basketball. She noted on the report that he should follow up with the health care unit as needed.

The claim about the remark allegedly made by Johnson can be quickly disposed of. In her affidavit, she disputes having made the remark, but makes the obvious observation that, if such a remark were made, it was a joke. Verbal harassment or the even the use of racially derogatory language do not violate the constitution. **See,** *Gutierrez v. Peters***, 111 F.3d 1364, 1375 (7th Cir. 1997);** *Patton v. Przybylski***, 822 F.2d 697, 700 (7th Cir. 1987).** The alleged

9

comment does not rise to the level of a constitutional violation.

Plaintiff admits in his amended complaint that Johnson checked his vital signs. **Doc. 55, p. 6**. He claims that she did not "examine" his knee, but he testified that his pants leg was rolled up and his knee was visible. **Ex. D, p. 10**. Johnson's affidavit and the Inmate Injury Report both indicate that she visually examined his knee.

Once again, plaintiff cannot meet either prong of the *Farmer* as to this defendant. Johnson's affidavit establishes that she evaluated plaintiff on June 9, 2004, and did not identify any medical condition which required immediate medical attention. Deliberate indifference may only be found where defendant knows of and disregards an excessive risk to inmate health or safety. ***Duane v. Lane*, 959 F.2d 673, 676 (7th Cir. 1992)**. Here, the plaintiff fell down and hurt his knee. There was no obvious fracture; the non-displaced fracture of the tibial plateau did not even show up on a later x-ray. Further, the fact that Dr. Feinerman ordered no treatment for plaintiff's knee when he saw him on June 14, 2004, buttresses the conclusion that Nurse Johnson did not consciously disregard a serious medical need on June 9, 2004.

### 4. Dr. Feinerman

Plaintiff acknowledges that he was admitted to the healthcare unit on June 25, 2004, and that he received medical treatment thereafter. **See, Doc. 93, ¶¶ 13 & 14; Doc. 114, ¶8**. His claim focuses on the period from the day of the injury to the day on which he was admitted, that is, from June 9, 2004, to June 25, 2004.

Dr. Feinerman first saw plaintiff on June 14, 2004. The record does not contain any suggestion that Dr. Feinerman had reason to know that plaintiff's knee was injured before that date. Plaintiff was seen on that date for a blood pressure check, and not because plaintiff asked to see a doctor for his knee. In his deposition, plaintiff testified that he doesn't remember if he put in any sick call slips between June 9 and June 14, 2004. It was his testimony that the reason

for not putting in a sick call slip even though his leg was giving him problems was "maybe I tried to give it a couple of days to see what – to try to take their [sic] advice of Mary Beth Lane." **Doc. 87, Ex. D, p. 39**.

Dr. Feinerman's examination on June 14, 2004, showed that plaintiff had some swelling, but also had a full range of motion of the knee. His assessment was that plaintiff had a sprained knee. Ex. A, ¶¶ 5, 6. He states in his affidavit, "This was a typical sports injury which I treated initially and believed to be a sprained knee." Ex. A, ¶74.

Dr. Feinerman next saw plaintiff on June 25, 2004, and ordered him admitted to the healthcare unit on that date. Dr. Feinerman ordered bed rest and Motrin for pain. As is detailed above, plaintiff was thereafter seen by outside orthopedic specialists on two occasions, and was sent to an outside facility for an MRI. His injury ultimately healed with the treatment rendered to him by Dr. Feinerman.

The Eighth Amendment does not require a prison doctor to keep an inmate pain-free. **See, *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).** An inmate is not constitutionally entitled to "unqualified access to healthcare" or to the best care possible; rather, he is entitled only to "adequate medical care." ***Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)**.

Here, the record establishes that plaintiff received the level of care that is constitutionally required. Dr. Feinerman initially viewed his injury as a sprain. When it did not heal on its own, Dr. Feinerman obtained an MRI and consultations with outside specialists. Perhaps he could have referred plaintiff to an outside specialist on the first visit, but that was a treatment decision. "To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." ***Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006)**.

Dr. Feinerman initially viewed the injury as a sprain, and treated it as such. It was not

11

until July 6, 2004, when the knee had not gotten better with bed rest, that Dr. Feinerman decided that plaintiff needed to be seen by an orthopedic physician. It could be argued that, in hindsight, Dr. Feinerman should have realized sooner that the injury was something more than a sprain. However, that is beside the point in this case. In evaluating a claim of deliberate indifference, the court does not evaluate the defendant's conduct in light of what a "reasonable doctor" would have done. ***Walker v. Peters*,** 233 F.3d 494, 499 (7th Cir. 2000). As the Seventh Circuit has stated, "A doctor might be careless in not appreciating the need to investigate several possible explanations for a particular prisoner's symptoms, and this carelessness may constitute malpractice. But malpractice alone is not enough to meet the constitutional standard." ***Id.***

The record establishes that plaintiff cannot satisfy either the subjective or the objective component of the ***Farmer*** test as to Dr. Feinerman. Plaintiff has not established the existence of a genuine dispute as to any relevant material fact. The motion should be granted.

### Recommendation

This Court recommends that Defendants' Motion for Summary Judgment **(Doc. 87)** be **GRANTED**. Judgment should be entered in favor of defendants Adrian Feinerman, Mary Beth Lane, Amanda Johnson, and Wexford Health Sources, Inc.

If this Report and Recommendation is adopted, as well as the Report and Recommendation on defendant Christine Brown's motion for summary judgment **(Doc. 72)**, no claims will remain pending.

Objections to this Report and Recommendation must be filed on or before **August 11, 2008.**

**Submitted: July 23, 2008.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**